UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD A. THOMAS,

    Plaintiff,

v.                                                  Case No. 06-C-1126

WILLIAM POLLARD,

    Defendant.

**DECISION AND ORDER DENYING HABEAS CORPUS PETITION**

### I. BACKGROUND

On October 30, 2006, the petitioner, Richard A. Thomas ("Thomas"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his confinement at the Green Bay Correctional Institution where the respondent, William Pollard, is warden. Thomas was convicted on three counts of delivering less than 1 gram of cocaine, and one count of delivering more than forty grams of cocaine, in violation of Wis. Stat. §§ 961.41(1)(cm)1g and 961.41(1)(cm)4, following a jury trial in the Eau Claire County Circuit Court. On September 24, 2004, Thomas was sentenced to three concurrent, ten-year terms of imprisonment on the three counts of delivering less than one gram of cocaine, each consisting of five years of initial confinement and five years of extended supervision. The court also sentenced Thomas to thirteen years' imprisonment on the count of delivering more than forty grams of cocaine, consisting of seven years of initial confinement and six years of extended supervision, concurrent to the other sentences.

Thomas appealed his conviction, and in a decision dated April 11, 2006, the Wisconsin Court of Appeals affirmed his conviction. On May 18, 2006, Thomas filed a motion in the Wisconsin Supreme Court seeking to extend the thirty-day deadline for petitioning that court for review of the Wisconsin Court of Appeals' decision. The Wisconsin Supreme Court denied Thomas' motion on May 19, 2006. Thomas did not file a petition for certiorari in the United States Supreme Court. As previously stated, Thomas thereafter filed his federal habeas petition on October 30, 2006.

Thomas' habeas petition asserts four claims: (1) that the State presented insufficient evidence to convict Thomas on the charge of delivery of cocaine; (2) that the prosecutor improperly bolstered the testimony of Aaron Perez, one of the State's witnesses; (3) that the prosecutor improperly bolstered the testimony of Randy Coey, another one of the State's witnesses; and (4) that Thomas received ineffective assistance of counsel at trial. The respondent concedes that Thomas has exhausted his state court remedies with respect to the issues raised in his habeas petition and that the petition was timely filed.

For the reasons which follow, Thomas' petition for a writ of habeas corpus will be denied and this action will be dismissed.

## II. FACTS

The following is a summary of the facts underlying Thomas' convictions as set forth by the Wisconsin Court of Appeals.

> Here, two witnesses testified they purchased cocaine from Thomas on repeated occasions, one at $60 per gram, and the other at $650 to $700 per ounce. Both testified that they were familiar with the effect of cocaine, and, based on their experience, the substance they bought from Thomas was cocaine. When Thomas was arrested, he had $2,200 in cash, as well as a large amount of dietary supplement commonly used by cocaine dealers as a cutting agent. Further, during the period which the alleged transactions occurred, Thomas bought a car with $4,000 cash.

2

Case 2:06-cv-01126-WEC   Filed 08/27/07   Page 2 of 14   Document 35

(Dkt. 19, Ex. G:3).

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("'[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.'") (quoting *Hass v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990)).

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief under Section 2254 unless the state court's judgment

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (quoting *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)). A federal habeas court may not rely on its own precedent or that of circuit courts of appeals. There must be Supreme Court precedent to support the petitioner's claim and that Supreme Court precedent must have clearly established the relevant legal principle as of the time of the petitioner's direct appeal. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court

3

precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). A state court decision "'minimally consistent with the facts and circumstances of the case'" is not unreasonable. *Connor v. McBride*, 375 F.3d 63, 649 (7th Cir. 2004) (citation omitted).

Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

The AEDPA's deferential standard of review only applies where a state court has adjudicated a petitioner's claim on the merits. *Canaan v. McBride*, 395 F.3d 376, 382 (7th Cir. 2005); *Braun v. Powell*, 227 F.3d 908, 916 (7ht Cir. 2000). Where there is no state court decision on the merits, a federal habeas court applies the standard of 28 U.S.C. § 2243, and disposes of the petitioner's claim "as justice and law require." *Id.* at 917.

That having been said, before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts and (2) fairly present any federal claims in state court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural

4

default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (internal quotations omitted). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims

5

would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50 (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986)). The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray*, 477 U.S. at 496). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999).

## IV. DISCUSSION

In his petition, Thomas raises four challenges to his conviction. However, in Thomas' direct appeal to the Wisconsin Court of Appeals, he only raised his claim of insufficiency of the evidence. (Dkt. 19, Ex. D, G). The Wisconsin Court of Appeals' decision and Thomas' state court appellate brief make no mention of his claims of improper bolstering of witnesses or ineffective assistance of counsel. Such being the case, these claims are procedurally defaulted because Thomas failed to give the Wisconsin courts "a full and fair opportunity to rule on the merits" of these other claims. *Lewis v. Miller*, 220 F.3d 485, 490 (7th Cir. 2000).

In addition to failing to present his claims of improper bolstering of witnesses and ineffective assistance of counsel on direct appeal to the Wisconsin Court of Appeals, Thomas failed to timely file his petition for review in the Wisconsin Supreme Court. (Dkt. 19, Ex. H). The Wisconsin Court of Appeals issued its decision affirming Thomas' conviction on April 11, 2006. On May 18, 2006, Thomas filed a motion in the Wisconsin Supreme Court seeking to extend the thirty-day deadline for filing a petition for review. This motion was denied by the Wisconsin Supreme Court because more than thirty days had passed since the issuance of the court of appeals' order. Such being the case, Thomas has also procedurally defaulted his claim of the insufficiency of the evidence.

As previously stated, however, a procedurally defaulted claim may be reviewed "if the petitioner can show cause and prejudice for [his] failure to exhaust [his] claims, or if a failure to review them on these procedural grounds would result in a fundamental miscarriage of justice." *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999). A "fundamental miscarriage of justice" is shown where "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Rodriguez*, 193 F.3d 913, 917 (7th Cir. 1999) (quoting *Murray*, 477 U.S. at 495-96). "This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Thomas argues that his procedural default should be excused because the facts of his case unequivocally demonstrate that he is actually innocent of his crimes. In this connection, Thomas contends that the State failed to prove his guilt beyond a reasonable doubt due to insufficient evidence. More precisely, Thomas argues that the State failed to prove the element of actual delivery, failed to prove that the substance was in fact cocaine, and failed to prove that Thomas knew or believed that the substance in question was cocaine. This is because there were no third party

7

witnesses to a delivery and no police involvement via a wire tap or a controlled buy. Thomas also notes that at trial there was no evidence produced of cocaine residue, of a cutting agent, of marked money from a controlled buy, or of field tests and lab reports.

Thomas also questions the validity of the evidence offered at trial. Thomas argues that Officer Jeff Wilson lied under oath about whether other individuals arrested along with Thomas on February 13, 2004, at 2008 Crescent Avenue were ever charged with or arrested for cocaine violations. In particular, Thomas contends that Officer Wilson was aware that James Maher was arrested on cocaine charges on February 4, 2004, and that on October 22, 2003 a large amount of cocaine had been found in Maher's vehicle. Thomas argues that a cutting agent was not found on his person but rather was found later in Thomas' vehicle. And, according to Thomas, Maher was in possession of Thomas' vehicle on the date that a cutting agent for cocaine was found in the vehicle.

Thomas also argues that State witness Randy Coey lied about how long he had known Thomas, and that the prosecution improperly bolstered Coey's testimony even though it was aware of Coey's lie. Specifically, Thomas notes that the prosecutor stated in his closing "[b]ut does that mean that every single thing [Coey] said today under oath was a bald face lie? Of course not." (Dkt. 19, Ex. S:212.)

Further, Thomas contends that the jury was given an inaccurate view of Aaron Perez's credibility. Specifically, Thomas argues that Perez had previously accused Thomas of having relations with Perez's girlfriend, and that the prosecution improperly bolstered Perez's credibility by telling the jury that Perez had agreed to take a polygraph test to verify his testimony.

8

Lastly, Thomas argues that his purchase of a new car, as well as the money found on his person at the time of his arrest, were due to his receipt of an insurance check rather than due to cocaine dealing.

Despite Thomas' contentions, I conclude that Thomas has not carried his burden of establishing that he is "actually innocent." "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The evidence must be "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

Here, Thomas was convicted based on the testimony of two witnesses, as well as the presence of a cutting agent in his car, his holding of $2,200 in cash at the time of his arrest, and his recent purchase of a car with $4,000 in cash. Although Thomas has pointed to a lack of certain corroborating evidence which could have further supported the evidence provided at trial, Thomas has not offered any evidence which demonstrates his innocence. The lack of third party witnesses, police involvement via wiretaps, marked money, cocaine residue, or lab reports does not directly contradict the testimony of the two witnesses who stated that Thomas sold them cocaine on multiple occasions.

Moreover, the evidence presented at trial was sufficient such that a reasonable juror could convict Thomas. The two witnesses testified that they were familiar with cocaine, and that based on their experience, the substance they bought from Thomas was cocaine. Such testimony was

9

sufficient to establish that the substance was cocaine. This is because, simply stated, the identity of a drug may be established solely by circumstantial evidence. *See United States v. Murray,* 753 F.2d 612, 615 (7th Cir. 1985) ( identification of the substance as marijuana by co-conspirators, high price charged for the substance, and covert nature of purchases were sufficient to support a finding that the substance was marijuana); *State v. Anderson*, 176 Wis. 2d 196, 202-3, 500 N.W.2d 328, 330-31 (Wis. Ct. App. 1993) ("Identification of a controlled substance 'can be established by such circumstantial evidence as 'lay experience based on familiarity through prior use.'"). Furthermore, both witnesses testified that they had purchased cocaine from Thomas on multiple occasions, and provided particular prices and amounts for each transaction. This testimony was corroborated by the cutting agent found in Thomas' car, as well as by the cash on Thomas' person and his recent purchase of a car for cash. As such, the evidence introduced at trial was sufficient to establish the elements of actual delivery and intent.

To be sure, Thomas argues that the two witnesses' testimony was improperly bolstered. However, the claims of improper bolstering do not directly relate to whether the testimony of such witnesses was actually true and thus sufficient to sustain a conviction. The prosecutor's statement that everything Coey said was not a lie does not directly undercut the truthfulness of Coey's core testimony. Similarly, even assuming it was improper to let the jury know that Perez had agreed to take a lie detector test, such does not constitute evidence of Thomas' innocence.

Moreover, it is not in any event entirely clear that the prosecutor improperly bolstered the witnesses' credibility. In regards to Perez's testimony, it was not improper (at least under Wisconsin law) to admit evidence of an offer to take a polygraph test. "Although a polygraph test result might itself be inadmissible, an offer to take a polygraph examination is relevant to an assessment of the

offeror's credibility and may be admissible for that purpose." *State v. Hoffman*, 106 Wis. 2d 185, 217, 316 N.W.2d 143, 160 (Wis. Ct. App. 1982) (citing *Lhost v. State*, 85 Wis. 2d 620, 634 n. 4, 271 N.W.2d 121, 128 (1978)).

Furthermore, the prosecutor's statement regarding Coey's truthfulness was in relation to Coey's previous criminal charges, and not his alleged lying about how long he had known Thomas:

> As to Mr. Coey, there is no question that Mr. Coey had criminal charges issued against him. Sadly enough, most of the people that we see who have drug problems, who buy drugs and who are involved in drug activities like this have problems like that. I have never had a case in which a priest or a nun bought cocaine.
> But does that mean that every single thing he said today under oath was a bald-face lie? Of course not. Whatever you can say about the fact that Mr. Coey may have committed some other crimes, it is absolutely uncontested that he received nothing, no concessions for his testimony.

(Dkt. 19, Ex. S:212.)

Additionally, and most importantly, Thomas' arguments relating to the witnesses' credibility do not demonstrate that he is actually innocent of cocaine delivery. Although Perez may have had a motive to lie, given that he accused Thomas of having relations with Perez's girlfriend, the fact that he may have had such motive does not prove that Thomas did not deliver cocaine to Perez. Similarly, Coey's alleged false testimony regarding how long he knew Thomas may somewhat tarnish Coey's credibility, but it does not prove that Coey lied about Thomas' deliver of cocaine; nor does it constitute exculpatory evidence proving that Thomas did not deliver cocaine.

Thomas' assertions as to the sources of the cutting agent, the money on his person, and the money that was used to purchase a car also do not prove his innocence. Thomas' suggestion that Maher was the source of the cutting agent does not prove that Thomas was not the source of the cutting agent found in his car. Moreover, although Thomas' contention that the source of his cash

11

was an insurance payment could arguably cast doubt on some of the circumstantial evidence introduced at trial, this once again does not prove that he did not deliver cocaine. In order to demonstrate innocence such that no reasonable jury could convict, Thomas has the burden of presenting powerful evidence of actual innocence. Evidence which merely casts doubt on the credibility of witnesses or challenges the strength of circumstantial evidence is insufficient to meet this burden.

In addition to arguing that he is actually innocent, Thomas argues that his procedural default should be excused due to cause and prejudice. Specifically, Thomas contends that he was denied access to legal materials by prison staff, causing him to miss the thirty day time limit by which he was to file his petition for review with the Wisconsin Supreme Court. In support of such contention, Thomas has submitted documentation, and the respondent acknowledges that this deprivation of legal materials may very well constitute cause for Thomas' failure to file his petition for review in timely fashion. Thus, the court will assume that Thomas has demonstrated cause for his failure to timely petition the Wisconsin Supreme Court for a review of his insufficiency of the evidence claim.

However, Thomas has not demonstrated cause for his failure to raise on direct appeal his claims of improper bolstering of witnesses' testimony and ineffective assistance of counsel. Thomas notes that he was suffering from post-traumatic stress disorder, severe anxiety disorder, and clinical depression as a result of his incarceration. However, he does explain how these conditions affected his ability to raise all of his claims on direct appeal.

Given that Thomas has demonstrated cause for his failure to timely petition the Wisconsin Supreme Court, at least with respect to his insufficiency of the evidence claim, Thomas must show that the error of which he complains "worked to his *actual* and substantial disadvantage, infecting

12

his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494. Thomas must demonstrate that without this error, "there is a reasonable probability that the result of the trial would have been different." *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

But, Thomas is unable to demonstrate prejudice under his insufficiency of the evidence claim because, as discussed above, there was sufficient evidence presented at trial to sustain a conviction. Indeed, the jury convicted Thomas based on the testimony of the State's two witnesses and the circumstantial evidence linking Thomas' money and purchase of a car to the drug transactions. The State was not required to present additional proof in the form of wiretap recordings, lab tests, or cocaine residue.

In sum, Thomas is not to be excused from his procedural default because he has failed to demonstrate either cause and actual prejudice, or that failure to consider his claims would result in a fundamental miscarriage of justice, i.e., the conviction of an actually innocent man. Consequently, Thomas' claims are procedurally defaulted.

## V. CONCLUSION

In conclusion, this court is satisfied that the petitioner is not entitled to federal habeas corpus relief because he has procedurally defaulted all of his claims. Accordingly, Thomas' petition for a writ of habeas corpus will be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that Thomas' petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is dismissed.

**SO ORDERED** this 27th day of August 2007, at Milwaukee, Wisconsin.

> /s/ William E. Callahan, Jr
> WILLIAM E. CALLAHAN, JR.
> United States Magistrate Judge